1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LORI J. SEE, | ) Case No.: 1:15-cv-00692-BAM |
| Plaintiff, | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

Plaintiff Lori J. See ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

1

**FACTS AND PRIOR PROCEEDINGS**

In June 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income.  AR 170-73, 177-82.[1]  Plaintiff alleged that she became disabled on October 16, 2010, due to a right arm injury, distal clavicle, arthritis, bursitis in shoulder, and arthritis in lower back, hands and knees.  AR 112, 214.  Plaintiff's application was denied initially and on reconsideration.  AR 112-16, 119-24.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ G. Ross Wheatley held a hearing on October 9, 2013, and issued an order denying benefits on November 7, 2013.  AR 18-32, 38-65.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3, 14.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on October 9, 2013, in Stockton, California.  AR 38-65.  Plaintiff appeared and testified.  She was represented by counsel, Tony Ocha.  Impartial Vocational Expert ("VE") Steven Schmidt also appeared.  AR 40-41.

In response to questioning by the ALJ, Plaintiff testified that she was 53 years old, 5'5" tall and weighed 170 pounds.  Plaintiff graduated from high school and has a Bachelor of Science degree in Christian education.  She can read, write, add, subtract, multiply and divide.  AR 43-44.

Plaintiff testified that she stopped working in October 2010 because she injured her shoulder on the job, and she never returned to work.  Plaintiff confirmed that she suffered a right arm injury and has bursitis in her right shoulder.  She also has lower back pain and arthritis in her hands and knee.  AR 45-46.

When asked about her right shoulder, Plaintiff testified that she injured it at work in August 2010.  She was placed on light duty and then reinjured it.  She had surgery to remove a protruding bone in July 2011, followed by physical therapy.  Plaintiff reported that she can only lift about 10 to 15 pounds on that side.  She was told that she would never have full use of that shoulder and it was totally disabled.  At the hearing, Plaintiff was able to extend her arm horizontally and raise it above

---

[1]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

her shoulder.  Plaintiff last saw a doctor for her shoulder in 2012.  The doctor recommended exercises to do at home, but Plaintiff had not been doing them because they did not help.  AR 46-48.

When asked about the arthritis in her hands, Plaintiff testified that she cannot grip very well with them and sometimes drops things.  Her physician prescribed medication therapy to help with pain management.  She also was prescribed medication for severe tremors in her right hand.  She still has tremors once or twice a week, but they are not as severe.  AR 49.

When questioned about her lower back pain, Plaintiff testified that she wakes up severely sore across her lower spine area.  She feels stiffness and pain, and it will seize up on her about once or twice a day.  Her back is better when walking around, but walking with her knee is "not so good sometimes." AR 49-50. Plaintiff is going to see an orthopedic doctor for her knee.  Her right knee has some arthritis, but the left knee is the one causing her issue.  Her left knee has a lot of swelling and pain, and she wears a knee brace some days.  The doctor did not prescribe the brace, but told Plaintiff that she could get one if she wanted.  AR 50-51.

Plaintiff reported that she had been more active recently because her father had surgery.  She has been taking him to doctor's appointments because he cannot drive.  She also takes her stepmother to appointments.  AR 51-52.

When asked about her daily activities, Plaintiff testified that she can shower and dress, vacuum, sweep, cook and shop.  She can drive and has been driving her dad three times a week.  She can walk less than a half mile before she would have to rest about half an hour.  When sitting, she has to get up and move every 15 to 20 minutes for 5 or 10 minutes.  She can stand about 20 minutes without severe pain.  At home, she likes to read about an hour and a half each day.  She has a home computer, but her internet is shut down.  She had a Facebook page that she would look at for an hour or two a day.  Plaintiff also testified that she socializes with other family members, including her brother, dad and church family.  She attends church every Sunday and Wednesday when she can.  AR 52-56.

In response to questioning from her attorney, Plaintiff testified that her worker's compensation claim had been settled.  She clarified that her back pain extends down the back of both legs after walking or housework.  She lies down an hour and a half to two hours each day to help with her back.

Lying down is more comfortable than sitting in a chair.  When asked about her hands, Plaintiff reported that it affected her ability to type and it was sometimes difficult to grip wet dishes.   AR 56-58.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Stephen Schmidt.  The VE confirmed that Plaintiff's past work was identified as sorter, hand packer, childcare attendant and child daycare worker.  AR 60-61.  In the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing light work with the following limitations: occasional ladders, ropes, scaffolds, ramps, stairs, balancing, stooping, crouching, kneeling and crawling; overhead reaching limited to frequent with the right upper extremity; and handling limited to frequent bilaterally.  The VE testified that this person could perform Plaintiff's past work as a child daycare worker.  AR 61.

For the second hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing light work with the following limitations:  a sit/stand option provided the person is not off task more than 10 percent of the period; occasional ladders, ropes, scaffolds, ramps, stairs, balancing, stooping, crouching, kneeling and crawling; overhead reaching limited to frequent with the right upper extremity; and handling limited to frequent bilaterally.   The VE testified that this person could not perform Plaintiff's past work, but could perform other work such as parking attendant, information clerk, and office helper.  AR 61-62.

For the third hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing sedentary work with the following limitations: occasional ladders, ropes, scaffolds, ramps, stairs, balancing, stooping, crouching, kneeling or crawling; overhead reaching limited to frequent with the right upper extremity; and handling limited to frequent bilaterally.  The VE testified that there would be jobs this person could perform, including assembly, order clerk and information clerk.  AR 62-63.

If the ALJ were to add to any of the hypotheticals that due to combination of medical conditions and associated pain, this person would probably require additional breaks throughout the day of 15 minutes every two hours in addition to ordinarily scheduled breaks, the VE testified that there would not be work that the person could perform.  AR 63-64.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 274-592.  The relevant medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 23-32.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 17, 2010, her alleged onset date.  AR 23.  Further, the ALJ identified status post right shoulder arthroscopic surgery, degenerative disc disease of the lumbar spine and arthritis in the hands and knees as severe impairments.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 24-25.  Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that Plaintiff was limited to occasionally climbing ladders, ropes, scaffolds, ramps, stairs, balancing, stooping, crouching, kneeling, and crawling.  Plaintiff also was limited to frequent overhead reaching with the right upper extremity and frequent handling bilaterally.  AR 25-31.  The ALJ found that Plaintiff could perform her past relevant work as a child daycare worker.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from August 17, 2010, through the date of decision.  AR 31-32.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,*
*Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's
determination that the claimant is not disabled if the Commissioner applied the proper legal standards,
and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of
Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which has
lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §
1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such
severity that he or she is not only unable to do his or her previous work, but cannot, considering his or
her age, education, and work experience, engage in any other kind of substantial gainful work which
exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The
burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.
1990).

## DISCUSSION[2]

The sole issue is whether the ALJ erred in his evaluation of Plaintiff's subjective complaints.
Plaintiff argues that the ALJ failed to articulate sufficient reasons to find her not credible. The
Commissioner counters that the ALJ provided multiple specific and well-supported reasons for finding
that Plaintiff's allegations were not fully credible.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage
in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).
First, the claimant must produce objective medical evidence of her impairment that could reasonably
be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the
first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or
brief is not to be construed that the Court did not consider the argument or brief.

regarding the severity of her symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the claimant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this instance, the ALJ found that the credibility of Plaintiff's statements was weakened by inconsistencies between her allegations, her statements regarding daily activities and the medical evidence. AR 31. Contrary to Plaintiff's suggestion that the ALJ merely set forth boilerplate language in rejecting her credibility, the Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 26-31.

First, the ALJ discounted Plaintiff's credibility because she "described daily activities that [were] inconsistent with [her] allegations of disabling symptoms and limitations." AR 26. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). Here, the ALJ considered Plaintiff's reported ability to complete her personal care, prepare meals, perform light household cleaning, including dusting and vacuuming, use public transportation, go out alone, walk to the store, drive, shop in stores, interact with friends on social networking sites, attend church and assist in caring for her elderly father. AR 26, 51-56, 222-25, 322. The ALJ reasonably found that these daily activities were inconsistent with her allegations of disabling symptoms and limitations. *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for rejecting claimant's credibility); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's

ability to perform various household chores such as cooking, laundry, washing dishes and shopping, among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *see also Branham v. Colvin*, 2015 WL 8664157, at *2 (C.D. Cal. Dec. 11, 2015) (ALJ properly considered plaintiff's activities of daily living in assessing credibility; plaintiff was able to use a computer, attend church, shop, ride in a car, cook occasionally and take care of her own personal care).

Plaintiff contends that there is no indication that she is "capable of performing anything other than a few basic daily activities." (Doc. 14 at p. 11). However, "[e]ven where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of the symptoms alleged can support an adverse credibility determination."). Further, because the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence then it is not Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Second, the ALJ discounted Plaintiff's allegations because her treatment had been "essentially routine and/or conservative in nature." AR 27. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Here, the ALJ considered Plaintiff's testimony that physical therapy helped her right shoulder and she had stretches and home exercises that she did not complete. AR 27, 46, 47-48. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (because the claimant responded favorably to conservative treatment, including physical therapy, the ALJ properly found that such treatment undermined the claimant's subjective reports regarding the disabling nature of his pain).

Plaintiff argues that the ALJ's decision overlooks the steroid injections and surgery for her shoulder, which do not equate to conservative treatment. AR 46, 324, 415, 437. However, the ALJ acknowledged Plaintiff's surgery, but noted that her shoulder injury was "treated and responded to treatment, which resulted in full range of motion." AR 30, 447, 534. Plaintiff also testified that after surgery and physical therapy, she did not have any continuing treatment for her right shoulder. AR 47.

Further, at least one physician characterized Plaintiff's shoulder treatment as conservative following surgery.  AR 483.  *See, e.g.*, *Barajas v. Colvin*, 2016 WL 320104, at *4-5 (C.D. Cal. Jan. 26, 2016) (conservative treatment after surgeries was clear and convincing reason for discrediting testimony); *Ortez v. Comm'r of Soc. Sec.*, 2012 WL 3727136, at *7-8 (E.D. Cal. Aug. 24, 2012) (upholding credibility determination where ALJ considered, among other things, claimant's conservative treatment following surgery).

Third, the ALJ discounted Plaintiff's testimony because her reasons for stopping work were "unrelated to her own medical condition."  AR 27.  The ALJ noted that Plaintiff "indicated she stopped working as her job was seasonal."  AR 27.  In assessing credibility, the ALJ was not precluded from considering the fact that Plaintiff was unemployed for reasons other than her disability.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly found claimant's alleged disability not credible based in part on the fact that the claimant left work for economic rather than medical reasons); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (pain testimony properly rejected because claimant was laid off from work for reasons unrelated to her pain).  As acknowledged by the ALJ, Plaintiff testified that she had performed seasonal work.  AR 45. The ALJ's determination is supported by substantial evidence in the record.  In November 2010, Plaintiff informed Dr. Alexis Dasig that she had completed her seasonal work and had been laid off for at least a week. AR 284.  After her surgery in 2011, Plaintiff reported to Dr. C. Scott Walthour that she was doing well after surgery, she primarily did seasonal work and there was no work available for her at that time.  AR 459.

Fourth, the ALJ found that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations."  AR 27.  An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility.  *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *see also Parra*, 481 F.3d at 750 (ALJ reasonably found complaints of disabling knee pain not credible in light of lab tests showing knee function within normal limits).  Here, the ALJ relied on objective evidence from 2012 and 2013,

among other records, which demonstrated that Plaintiff had full range of motion, intact rotator cuff strength, no atrophy or instability and strength in her right shoulder after surgery. AR 476, 483, 534. The ALJ also relied, in part, on objective evidence from 2012 demonstrating that Plaintiff had normal range of motion in her knees, along with Plaintiff's report in 2013 that she was able to walk five to six blocks. AR 349, 534. With respect to her degenerative disc disease of the lumbar spine, the ALJ considered objective evidence from November 2011 indicating Plaintiff had normal range of motion, no obvious signs of inflammation and normal bulk, tone and strength. AR 323-24. The ALJ additionally relied on Plaintiff's report in 2013 that she was able to walk five or six blocks. AR 534. Furthermore, the ALJ accounted for any limitations resulting from Plaintiff's shoulder, hand and knee arthritis and lumbar spine degenerative disc disease in the RFC. AR 29. Plaintiff has not challenged the RFC finding.

Fifth, and finally, the ALJ appropriately incorporated his observations when considering Plaintiff's allegations of pain and functional limitations. AR 27. An ALJ's "personal observations may be used … in the overall evaluation of the credibility of the individual's statements." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this instance, the ALJ recognized that his "observations at a hearing do not, alone, constitute substantial evidence." AR 27. However, the ALJ further reasoned that "said observations, when combined with other inconsistencies present in the record as to the degree of pain and functional limitation allegedly experienced by the claimant, are worthy of consideration in reaching a credibility determination." AR 27. Plaintiff asserts that the ALJ's statements regarding his observations are generalities, and are not clear and convincing reasons supporting the ALJ's disbelief of Plaintiff's testimony. (Doc. 14 at p. 12 and n. 2). Despite Plaintiff's assertion, it is evident from the record that the ALJ relied on personal observations at the hearing, which included Plaintiff's ability to extend her arm out horizontally in front of her and raise it above her shoulder. Indeed, the ALJ specifically requested that Plaintiff perform these actions and then ensured that her demonstrated abilities were documented on the record. AR 46-47.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Lori J. See.

IT IS SO ORDERED.

Dated:   **September 16, 2016**          /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE

11